# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KERRY JEAN MARIE GLASER,** | : | **Civil No.  4:23-CV-1922** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO,**[1] | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

In the instant case, we are called upon to review a decision by a Social Security Administrative Law Judge (ALJ) that denied disability benefits to the plaintiff, Kerry Glaser. Glaser filed a claim for supplemental security benefits on January 26, 2021, alleging that she was disabled as of March 19, 2020, due to an array of physical and mental impairments, including anxiety and depression. (Tr. 11, 13). As to her mental impairments, although her mental status examinations were frequently unremarkable

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

and she reported some functional activities of daily living, the record also reflects episodes of profound impairment in that, during the relevant disability period, she was psychiatrically hospitalized and attempted suicide at least once.[2]

Against this medical backdrop, which showed unequivocally that Glaser had attempted to end her life during the time her disability application was being evaluated, a fact which was undisputedly known and discussed by the administrative law judge (ALJ) at the hearing, the ALJ made no mention of Glaser's suicide attempt in the decision denying her benefits, instead writing it off as "inpatient treatment during February 2022," which the ALJ concluded was "not indicative of the frequency, intensity, and persistence of the claimant's symptoms related to her mental impairments throughout the entirety of the period of time subsequent to the claimant's alleged onset date of disability." (Tr. 21). Then, the ALJ found every expert opinion on Glaser's mental impairments unpersuasive, instead fashioning an RFC based upon his own interpretation of the record which accounted for more

---

[2] As discussed below, Glaser testified she attempted suicide a second time in October of 2022, but she was not hospitalized following that attempt. She also testified that she had an inpatient hospitalization at PPI in October of 2021. (Tr. 72). The record also reflects two suicide attempts in 2015 with hospitalization and two three-month stints at Philhaven – one in 2015 and one in 2020. (Tr. 1033-34).

mental limitations than the experts would have suggested but wholly ignored Glaser's history of suicidal behavior and multiple inpatient hospitalizations.

In our view, these errors on the part of the ALJ, including failing to consider the evidence of her February 2022 suicide attempt, and history of suicidal ideation and attempts and inpatient hospitalizations, coupled with the rejection of all medical opinion evidence in favor of the ALJ's own interpretation of the evidence, compel remand. Moreover, since no expert opined on Glaser's mental condition following her suicide attempts and inpatient hospitalization, and the ALJ fashioned an RFC that clearly did not give adequate consideration to this serious manifestation of her mental impairments, more is needed here before we can engage in an informed analysis of this claim. Therefore, for the reasons set forth below, this case will be remanded to the Commissioner for further proceedings.

## II.    <u>Statement of Facts and of the Case</u>

The administrative record of Glaser's disability application reveals the following essential facts: On January 26, 2021, Kerry Glaser filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning March 19, 2020. (Tr. 11). According to Glaser she was totally disabled due to the combined effects of the following impairments: depression, chronic pain, a herniated nucleus pulposus, cervical radiculitis, degenerative disc

disease, kyphosis, cervical region, cervical spinal fusion, anxiety/panic disorder, ADD, and multilevel cervical spondylosis. (Tr. 18). Thus, Glaser's reported impairments were both physical and psychological, however our remand of this case focuses on her emotional impairments. At the time of the alleged onset of her disability Glaser, who was born in 1983, was thirty-seven years old which is defined as a younger individual under the Commissioner's regulations. She had at least a high school education and had previously worked in medical billing and coding. (Tr. 24, 63-64).

### A. Glaser's Clinical History and the Medical Opinion Evidence.

With respect to Glaser's emotional impairments, the clinical record disclosed that she had a history of inpatient hospitalization for suicidal behaviors. As summarized by state consultative psychiatric examiner, Dr. John Kajic:

> PSYCHIATRIC HISTORY: Psychiatric hospitalizations are Hershey Medical Center in 2015, attempted suicide; 2015 Philhaven, attempted suicide. Prior treatment was at Day Hospital in Philhaven in 2015 for approximately three months. She was also in Philhaven in 2020 for approximately three months.

(Tr. 1033-34). Following her alleged onset date, she was referred to a psychiatric outpatient clinic at Philhaven in September 2019 "after she self-harmed." (Tr. 421-33, 872). An assessment from Philhaven rated her condition as high severity, moderate psychosis, high emotional lability, and high self-harm risk. (Tr. 423). After

4

attending the outpatient program for about three weeks, in October 2019 she was taken to the emergency department after she made statements to family members about being depressed and "not wanting to be around anymore." (Tr. 872). She was discharged after an evaluation found her to be stable and a partial hospitalization program was recommended. (Id.)

Despite her frequent hospitalizations and suicidality, her mental status examinations during the relevant period were frequently unremarkable. For example, she started behavioral therapy in August 2021, and progress notes confirmed mental status findings within normal limits, including average intellectual functioning, good insight and judgment, intact memory and normal speech and through process but depressed and anxious mood. (Tr. 1119, 1122, 1126, 1133, 1141). Nonetheless, on depression screenings she frequently noted she wished she was dead, and she reported having passive suicidal thoughts. (Tr. 1119, 1123, 1126, 1130, 1133, 1136, 1142).

Then in February of 2022, Glaser attempted suicide by overdosing on gabapentin and benzodiazepines. (Tr. 1189). She reported being under significant stress, but treatment notes again emphasize her history of multiple suicide attempts, including one requiring ICU admission. (Tr. 1189, 1198). She was hospitalized for seven days, then completed one-and-a-half weeks at Brooke Glen psychiatric

hospital.[3] (Tr. 1393). Following her February 2022 suicide attempt she was noted as high risk for suicidality in March and April and reported suicidal urges every other day. (Tr. 1361, 1364, 1368). It was noted she was experiencing racing thoughts and anxiety at a 7/10. (Tr. 1361). She testified to another self-harm attempt one month prior to the hearing, in August of 2022, but stated she was not admitted for inpatient hospitalization and instead her Zoloft was adjusted. (Tr. 83).

Thus, the record clearly demonstrates that Glaser was repeatedly hospitalized for her psychiatric symptoms of depression and attempted suicide twice during the relevant period, and at least four times within an eight-year period.

Against this clinical backdrop, consultative examiner Dr. John Kajic conducted a mental status evaluation of Glaser on June 15, 2021, the year prior to Glaser's two suicide attempts in 2022 and inpatient hospitalization. Dr. Kajic acknowledged her history of psychiatric hospitalization and suicidality, and noted "depressive symptomatology includ[ing] dysphoric mood, crying spells, hopelessness, loss of usual interests, irritability, fatigue and loss of energy, diminished self-esteem, concentration difficulties, diminished sense of pleasure, and

---

[3] We note that Glaser testified that this was not her only in-patient hospitalization during the relevant period. She also testified to being admitted to an inpatient program at PPI in for one week in October 2021, (Tr. 72), but we were unable to locate any record of this hospitalization.

6

social withdrawal," as well as anxiety-related symptomatology including excessive apprehension and worry, irritability, and difficulty concentrating, but also reported relatively normal mental status examination findings. (Tr. 1034-35). Indeed, Dr. Kajic's examination revealed Glaser had coherent thought processes, full orientation, intact attention and concentration, and average intellectual functioning, despite anxious mood and mildly impaired memory due to anxiety and nervousness. (Tr. 1035-36).

Following his evaluation of the plaintiff, Dr. Kajic opined Glaser had only mild limitations in making judgments on complex work-related decisions but no other limitations in her ability to understand, remember, and carry out instructions. (Tr. 1038). He further opined that, due to her anxiety and depression, Glaser was mildly limited in interacting appropriately with supervisors, coworkers, and the public and responding appropriately to usual work situations and to changes in a routine work setting. (Tr. 1039). He opined that she had no other limitations in her ability to concentrate, persist, or maintain pace or adapt or manage oneself. (Tr. 1039).

Two State agency psychological consultants also opined on Glaser's mental residual functional capacity (RFC). Around the same time Dr. Kajic examined the plaintiff, in June 2021, State agency psychological consultant Dr. Edward Jonas

7

reviewed Glaser's records and opined that she had no limitations in her ability to understand, remember, or apply information or concentrate, persist, or maintain pace, but mild limitations in interacting with others and adapting or managing oneself. (Tr. 100). On reconsideration, on December 7, 2021, Dr. Thomas Fink, Ph.D. opined that Glaser had mild limitations in all areas of mental functioning, including her ability to understand, remember, or apply information, interact with others, concentrate, persist, or maintain pace, and adapt or manage oneself. (Tr. 116). Notably, Dr. Fink acknowledged a history of several psychiatric hospitalizations, "but none recently"[4] and cited to normal mental status examinations and functional activities of daily living. (Tr. 116).

Thus, these medical opinions, which were issued prior to Glaser's 2022 suicide attempt and hospitalization, recommended, at most, mild limitations in any area of mental functioning but made no accommodations for her history of inpatient psychiatric hospitalization and suicidal tendencies.

It was against this medical backdrop that the ALJ came to hear Glaser's case.

---

[4] Since this opinion was also issued prior to Glaser's 2022 suicide attempt and psychiatric hospitalization.

### B. **The ALJ Hearing and Decision**

A disability hearing was conducted in this case on September 6, 2022, at which Glaser and a vocational expert testified. (Tr. 53-92). At the hearing, the ALJ questioned Glaser about her February 2022 suicide attempt and hospitalization, and Glaser testified that was the third or fourth such hospitalization she experienced and the second since the alleged onset date. (Tr. 72).

Following the hearing, on September 27, 2022, the ALJ issued a decision denying Glaser's application for benefits. (Tr. 8-26). In that decision, the ALJ first concluded that Glaser met the insured status requirements of the Act through December 31, 2024, had not engaged in substantial gainful activity since March 19, 2020, the alleged onset date. (Tr. 13).  At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Glaser had the following severe impairments: degenerative disc disease of the cervical spine, status post fusion of the cervical spine, post-laminectomy syndrome, bilateral mammary hypertrophy, obesity, major depressive disorder, mood disorder, generalized anxiety disorder, borderline personality, disorder, substance use disorder (medical marijuana use), agoraphobia with panic disorder, and attention-deficit hyperactivity disorder (ADHD). (Tr. 14). At Step 3, the ALJ determined that Glaser did not have an impairment or combination of impairments that met or medically equaled the

9

severity of one of the disability listing impairments. (Tr. 14-17). Between Steps 3

and 4, the ALJ then fashioned a residual functional capacity ("RFC") for the plaintiff

which considered Glaser's impairments as reflected in the medical record, and found

that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently reach overhead and in all other directions with both upper extremities. She can frequently handle, finger and feel with both upper extremities. The claimant can frequently climb ramps or stairs, but only occasionally climb ladders, ropes or scaffolds. She can frequently stoop, kneel, crouch or crawl. The claimant can understand, remember or carry out simple, routine, repetitive tasks. These are tasks that can be easily understood, easily performed, basic, not complicated, clear and straightforward. These tasks require little to no demonstration, and they can be learned within 30 days or less from the beginning of the job. She can make judgments on simple work-related decisions.

(Tr. 16).

The RFC analysis and resulting determination by the ALJ is remarkable in at

least two aspects. First, in formulating the RFC, the ALJ did not mention or consider

Glaser's well-documented history of suicide attempts, including her February 2022

suicide attempt which occurred during the relevant period. And, while the ALJ

acknowledged that she was hospitalized at that time, he characterized the February

2022 inpatient psychiatric hospitalization as an anomaly when compared with the

rest of the record, despite the medical evidence, as summarized above, clearly

10

demonstrating that she had been repeatedly hospitalized for her depression and had attempted suicide at least once prior. Nonetheless, the ALJ stated:

> The claimant's medical records indicate the claimant received treatment, including inpatient treatment during February 2022, for her symptoms related to her mental impairments. Additionally, the claimant has utilized prescribed psychotropic medications (Exhibits 2F, 11F, 15F, 19F, 22F, and 23F). However, the evidence discussed in three immediately preceding paragraphs indicate the claimant's treatment measures are effective in limiting the claimant's symptoms related to her mental impairments. Furthermore, the evidence discussed in three immediately preceding paragraphs indicates the inpatient treatment received by the claimant during February 2022 is not indicative of the frequency, intensity, and persistence of the claimant's symptoms related to her mental impairments throughout the entirety of the period of time subsequent to the claimant's alleged onset date of disability.

(Tr. 21). The preceding three paragraphs noted by the ALJ, which make no mention of the fact that Glaser attempted suicide at least once during the relevant disability period, focused exclusively on mental status examination findings showing relatively intact mental functioning, but provide no summary or mention of her consistently high-risk suicidal ideation, suicide attempts, and repeated hospitalization for these severe exacerbations in her mental impairments. (Tr. 20-21).

Second, in fashioning the RFC, the ALJ rejected the opinion of every psychiatric consultant who opined on the limitations Glaser experienced as a result of her mental impairments. On this score, while the ALJ found the opinion of

11

consultative examiner Dr. Kajic supported by his own evaluation of the plaintiff, he found it inconsistent with the longitudinal records documenting "abnormal clinical examination findings pertaining to concentration, persistence and pace" and concluded his opinion was no persuasive. (Tr. 22). The ALJ also rejected the opinions of both State agency psychological consultants, concluding they were inconsistent with documented abnormal clinical examination findings pertaining to Glaser's mental impairments. (Tr. 22-23).

Thus, the ALJ fashioned an RFC that was more restrictive than the opinions which he found unpersuasive with regard to Glaser's mental impairments, accounting for limitations which no expert opined Glaser required, but made no mention or accommodation for Glaser's documented history of suicidality and inpatient hospitalization for her mental impairments.

Having made these determinations regarding the unpersuasive nature of the medical opinions and reaching an RFC assessment based upon his own interpretation of the record, the ALJ concluded that considering her age, education, and RFC, there were jobs that existed in the significant numbers in the national economy that Glaser could perform and thus found she had not been under a disability during the relevant period. (Tr. 24-26).

This appeal followed. (Doc. 1). On appeal, Glaser argues, in part, that the RFC formulated by the ALJ is not supported by substantial evidence because it failed to account for all of her well-established limitations and that the ALJ failed to properly evaluate the medical opinion evidence in rejecting every expert opinion on her mental RFC. Because we find that the ALJ failed to adequately articulate the rationale which led the ALJ to formulate the mental RFC, which seemingly accounted for limitations not opined by any expert but ignored evidence of Glaser's suicide attempts, we will remand this case for further consideration by the Commissioner.

III.  **Discussion**

A.    **Substantial Evidence Review – the Role of this Court**

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial

evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see,

> e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks
> omitted). It means—and means only—"such relevant evidence as a
> reasonable mind might accept as adequate to support a conclusion."
> Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v.
> Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999)
> (comparing the substantial-evidence standard to the deferential clearly-
> erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is

disabled, but rather whether the Commissioner's finding that he is not disabled is

supported by substantial evidence and was reached based upon a correct application

of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205,

at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote

a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F.

Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of

a claim requires the correct application of the law to the facts."); see also Wright v.

Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal

matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review

of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential

standard of review. First, when conducting this review "we are mindful that we must

not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777

15

F.3d 607, 611 (3d Cir. 2014) (citing <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 552 (3d

Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence.

Rather our task is to simply determine whether substantial evidence supported the

ALJ's findings. However, we must also ascertain whether the ALJ's decision meets

the burden of articulation demanded by the courts to enable informed judicial

review. Simply put, "this Court requires the ALJ to set forth the reasons for his

decision." <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 119 (3d Cir. 2000).

As the Court of Appeals has noted on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for
> his decision. 220 F.3d at 119. Conclusory statements . . . are
> insufficient. The ALJ must provide a "discussion of the evidence" and
> an "explanation of reasoning" for his conclusion sufficient to enable
> meaningful judicial review. <u>Id</u>. at 120; <u>see Jones v. Barnhart</u>, 364 F.3d
> 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ
> particular "magic" words: "<u>Burnett</u> does not require the ALJ to use
> particular language or adhere to a particular format in conducting his
> analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009). Further, it is clear

that this duty of articulation extends to analysis of a claimant's mental and emotional

limitations. <u>See generally</u> <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, 212 (3d Cir.

2019).

Thus, in practice ours is a twofold task. We must evaluate the substance of the

ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim made here, based upon alleged inadequacies in the articulation of a claimant's mental RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the United States Court of Appeals recently addressed the standards of articulation that apply in this setting. In Hess the court of appeals considered the question of whether an RFC which limited a claimant to simple tasks adequately addressed moderate limitations on concentration, persistence, and pace. In addressing the plaintiff's argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that: "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.' " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could

17

function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . . " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In formulating a mental RFC the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

### B.    Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of

the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

19

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at

21

*5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate

which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

### C.     Legal Benchmarks for the ALJ's Assessment of Medical Opinion Evidence

The plaintiff filed this disability application after a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules

23

Regarding the Evaluation of Medical Evidence ("Revisions to Rules"),
2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see
20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner
must consider all medical opinions and "evaluate their persuasiveness"
based on the following five factors: supportability; consistency;
relationship with the claimant; specialization; and "other factors." 20
C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of
medical sources, deference to specific medical opinions, and assigning
"weight" to a medical opinion, the ALJ must still "articulate how [he
or she] considered the medical opinions" and "how persuasive [he or
she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a)
and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for
determining the persuasiveness of medical opinions are consistency and
supportability," which are the "same factors" that formed the
foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg.
5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered
the supportability and consistency factors" for a medical opinion. 20
C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to
"supportability," the new regulations provide that "[t]he more relevant
the objective medical evidence and supporting explanations presented
by a medical source are to support his or her medical opinion(s) or prior
administrative medical finding(s), the more persuasive the medical
opinions or prior administrative medical finding(s) will be." Id. at §§
404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with
respect to "consistency," "[t]he more consistent a medical opinion(s) or
prior administrative medical finding(s) is with the evidence from other
medical sources and nonmedical sources in the claim, the more
persuasive the medical opinion(s) or prior administrative medical
finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not
explicitly discuss, the three remaining factors in determining the
persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2),

24

416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015);

25

> Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that
> "SSR 96–2p does not prohibit the ALJ from crediting some parts of a
> treating source's opinion and rejecting other portions"); Connors v.
> Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June
> 10, 2011). It follows that an ALJ can give partial credit to all medical
> opinions and can formulate an RFC based on different parts from the
> different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–
> 00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016). Finally, where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings, 129 F.Supp.3d at 214–15.

It is against this backdrop that we evaluate the decision of the ALJ in this case.

### E.    This Case Will be Remanded.

As we have noted, the RFC in this case is flawed in at least two ways. At the outset, standing alone, the ALJ's complete failure to acknowledge or consider Glaser's history of suicidal ideation and attempts and inpatient psychiatric hospitalization requires remand. On this score, an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. Furthermore, it is well settled that "[t]he ALJ must consider all relevant evidence when determining an individual's residual functional capacity." Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001). And, "when a conflict in the

26

evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)). Thus, it is well-settled that, at a minimum, a remand is necessary when an ALJ's opinion ignores or fails to address material evidence supporting a disability claim. See Morales v. Apfel, 225 F.3d 310, 312 (3d Cir. 2000). This principle applies with particular force when an ALJ has "ignored competent medical evidence regarding psychological disability in favor of his own contrary conclusion." Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1154–55 (3d Cir. 1983).

Applying these legal benchmarks, it is generally conceded that an unexplained failure by an ALJ to fully acknowledge or address evidence of suicidal impulses by a disability claimant compels a remand. See, e.g., Salazar v. Barnhart, 468 F.3d 615, 622 (10th Cir. 2006); Roat v. Barnhart, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010). As one court has aptly observed in this regard: "Due to the ALJ's simultaneous silence as to a suicide attempt and reliance on progress notes containing a claimant's denials of suicidal ideations close in time to the suicide attempt, the Court is unable to conclude that the ALJ considered Plaintiff's medical condition as a whole or applied the appropriate legal standards." Lewis v. Colvin, No. 14-14495-CIV, 2016

WL 4810585, at *3 (S.D. Fla. Mar. 4, 2016).

So it is in the instant case. In February 2022, Glaser intentionally overdosed on medication to end her life and was hospitalized. (Tr. 1189). During her hospitalization, she reported a history of multiple overdose attempts in the past with one requiring ICU admission. (Id.) The ALJ was aware of this history of suicide since, at the hearing, the ALJ questioned her about her February 2022 suicide attempt, she reported another self-harm attempt one month prior to the hearing, and she testified that her February 2022 inpatient hospitalization was the third or fourth such hospitalization she had undergone. (Tr. 72, 83). Moreover, the medical opinion evidence that the ALJ considered also noted her history of suicide attempts. Dr. Kajic's mental status examination, which was conducted prior to Glaser's February 2022 suicide attempt, noted two previous suicide attempts in 2015 with hospitalization and two three-month periods at Philhaven – one in 2015 and one in 2020. (Tr. 1033-34). The State agency mental consultant's opinion also highlighted Glaser's history of inpatient psychiatric hospitalization but, since it was rendered prior to her February 2022 suicide attempt, concluded there had been "none recently." (Tr. 116).

Thus, undisputedly before the ALJ was ample evidence that Glaser had attempted suicide multiple times, and at least once during the relevant period which

28

required hospitalization. Despite this evidence that the ALJ was required to consider in fashioning the RFC, the ALJ made no mention of Glaser's suicide attempt, instead stating: "The claimant's medical records indicate the claimant received treatment, including inpatient treatment during February 2022, for her symptoms related to her mental impairments." (Tr. 21). The symptoms the ALJ did not specify, of course, included the plaintiff's attempted suicide. Moreover, the ALJ's characterization that this inpatient hospitalization was an anomaly in the record is simply not supported by the longitudinal evidence. In fact, as previously explained, Glaser repeatedly attempted suicide, had received inpatient psychiatric treatment on several occasions, and consistently reported suicidal ideation during examinations. The ALJ's failure to acknowledge or address Glaser's repeated suicidal ideations and attempts which were clearly before the ALJ was plainly in error, and we find this error to be material and not subject to any form of harmless error analysis. See Pool v. Colvin, No. 15-CV-02061-WHO, 2016 WL 4363405, at *2 (N.D. Cal. Aug. 16, 2016) (concluding that suicide attempt was material evidence for purposes of remand of Social Security Appeal for consideration of new evidence).

Compounding this error on the part of the ALJ was the ALJ's rejection of all the medical opinions in favor of his own interpretation of the evidence. On this score, while our highly deferential standard of review empowers "[t]he ALJ – not treating

or examining physicians or State agency consultants – [to] make the ultimate disability and RFC determinations," Chandler, 667 F.3d at 361, under Hess, an ALJ must draft a reviewable opinion with a valid explanation of the mental limitations in the RFC that is grounded in the evidence.

Here, the ALJ rejected the opinion of every medical expert and fashioned an RFC that was *more* restrictive than the opinions which he found unpersuasive with regard to Glaser's mental impairments, accounting for limitations which no expert opined Glaser required, but made no mention or accommodation for Glaser's documented history of suicidality and inpatient hospitalization for her mental impairments. While, under Hess, a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence, here the mental limitations in the RFC are divorced from any medical opinion of record leaving what evidence they are grounded in unexplained by the ALJ. Thus, the ALJ crafted an RFC based upon his own interpretation of the record, accounting for limitations which no expert opined Glaser required, yet wholly ignoring relevant evidence. This was error. See Morales 225 F.3d at 319; Daring, 727 F. 2d at 70 (An ALJ's personal observations of the claimant "carry little weight in cases . . . involving medically substantiated psychiatric disability"). Indeed, the new medical opinion evidence evaluation regulations do not alter the longstanding proposition that "[b]ecause they are not

treating medical professionals, ALJs cannot make medical conclusions in lieu of a physician." <u>Biller</u>, 962 F.Supp.2d at 779. <u>See e.g.</u> <u>Kenyon v. Saul</u>, No. 1:20-CV-1372, 2021 WL 2015067, at *9 (M.D. Pa. May 19, 2021). Here, the ALJ's wholesale rejection of the medical opinion evidence compelled heightened articulation on the part of the ALJ, particularly where the ALJ has not fully acknowledged the gravity of the mental health symptoms the plaintiff experienced.

Similarly, we conclude that the ALJ erred in failing to further develop the administrative record through a consultative examination once he determined that every medical opinion in this case was unpersuasive. As we have noted, "[t]he ALJ has a duty to develop the record when there is a suggestion of mental impairment by inquiring into the present status of impairment and its possible effects on the claimant's ability to work." <u>Plummer v. Apfel</u>, 186 F.3d 422, 434 (3d Cir. 1999). One of the tools available to an ALJ in this setting is a consultative examination. <u>Chalfant v. Comm'r of Soc. Sec.</u>, No. 4:20-CV-1719, 2022 WL 838118, at *5 (M.D. Pa. Mar. 21, 2022). Furthermore, when it is given that a claimant has a clear history of depressive symptoms, an "ALJ fail[s] in her duty to develop the record when she d[oes] not order a consultative examination." <u>Id.</u> at *6.

In this case it is clear that Glaser has a significant history of severe depression and anxiety. Moreover, the evidence before the ALJ demonstrated that, since the

31

medical experts had issued their opinions, significant developments had occurred with regard the manifestation of Glaser's mental health symptoms, specifically, she attempted suicide in February 2022. In our view, once the ALJ resolved to reject every medical opinion, the proper exercise of discretion in terms of fulfilling the ALJ's duty to develop the record required some further neutral evaluation of the plaintiff's mental state. The failure to fill this evidentiary void constituted a failure to develop the record which now further compels a remand.

Given the ALJ's failure to address material evidence in the record, coupled with an RFC that has no anchor to any expert opinion as to what limitations Glaser's impairments would require, more is needed here. Thus, we conclude that the ALJ's decision in this case is not supported by substantial evidence. Accordingly, we recommend that this case be remanded to the Commissioner for further consideration of this evidence. Yet, while we reach this conclusion, we note that nothing in this opinion ion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, that task should remain the duty and province of the ALJ on remand.

## IV.    <u>Conclusion</u>

Accordingly, for the foregoing reasons, the plaintiff's request for a new administrative hearing is GRANTED, the final decision of the Commissioner

denying these claims is vacated, and this case is remanded to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

*s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: November 7, 2025